UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KOHL A. SHALLENBERGER,<br><br>Plaintiff,<br><br>v.<br><br>MARK A. MCCANN, et al.,<br><br>Defendants. | Case No. 1:25-CV-124-CCB-ALT |

**OPINION AND ORDER**

Before the Court are five motions filed by parties on both sides. Proceeding chronologically, the first is a Motion to Dismiss filed by Defendants Best Deal Auto Sales, Inc. ("Best Deal"), Burt Blee Dixon Sutton & Bloom ("Burt Blee"), Jeremy Grogg, Matthew Senko, and J. Connor Fitzharris (collectively, the "Private Defendants"). (ECF 76). The second is a Revised Motion for Clerk's Entry of Default as to Defendant Megan Rogers ("Ms. Rogers"). (ECF 93). The third is a Motion for Clerk's Entry of Default as to Ms. Rogers and Defendant Adam Krupp ("Mr. Krupp"). (ECF 95). The fourth and fifth are two motions for Judgment on the Pleadings filed by Defendants Debra C. Stewart ("Ms. Stewart") and Ms. Rogers, respectively. (ECF 97; 112).

Additionally, a Motion to Stay Proceedings or Dismiss filed by Defendants Adam Krupp and Mark A. McCann is also pending before the Court. (ECF 90). In its discretion "to decide the order in which" multiple motions are disposed, the Court will rule on the Motion to Stay in a separate opinion. *See Aspen Am. Ins. Co. v. Blackbaud, Inc.*, 624 F. Supp. 3d 982, 990 (N.D. Ind. 2022).

## I. RELEVANT BACKGROUND

This matter is one link in a dizzying chain of cases involving Mr. Shallenberger that have played out over the last two decades. (ECF 82 at 2–3; ECF 77 at 2). The operative Second Amended Complaint alleges three claims for relief under 42 U.S.C. § 1983: (1) a Fourteenth Amendment procedural due process claim against Mr. Krupp, Mr. McCann, and Ms. Rogers; (2) a joint participation/conspiracy claim against all "private and state defendants,"[1] and (3) a First Amendment claim against Ms. Stewart involving a denied court transcript. (ECF 45).

The Second Amended Complaint presents its claims in a rather disjointed manner and omits significant factual context for the allegations. For example, Mr. Shallenberger makes several references to "arrears/lien indicators" or "lien/arrears status," but fails to specify what lien existed, what property it encumbered, and how it connects to his underlying claims. (*See id.*). Because of this, a detailed narrative of Mr. Shallenberger's factual allegations and this matter's complex procedural history are necessary to provide sufficient context for the Court's dispositions as to each motion.

In light of the deficiencies mentioned above, the Court reviewed undisputed, information outside of, but consistent with, the Second Amended Complaint. *See Tobey v. Chibucos*, 890 F.3d 634, 648 (7th Cir. 2018); Fed. R. Evid. 201. These included several official state notices and state court opinions provided to the Court by Defendants. The

[1] Mr. Shallenberger does not specify which defendants are subject to the joint participation/conspiracy claim. (*See* ECF 45 at 8). Instead, the Second Amended Complaint simply states that "private defendants and state defendants jointly participated in conduct fairly attributable to the state . . . ." (*Id.*). With that nonexclusive language against the backdrop of other claims with enumerated defendants, the Court will construe the complaint as levying a joint participation conspiracy claim against all defendants.

Court reviewed these for the sole purpose of providing sufficient context for Mr. Shallenberger's narrative and allegations. *Thulin v. Shopko Stores Operating Co., LCC*, No. 10-CV-196-WMC, 2013 WL 5946503, at *1 (W.D. Wis. Nov. 5, 2013) (citing *Pugh v. Trib. Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008) ("We may take judicial notice of documents in the public record . . . without converting a motion to dismiss into a motion for summary judgment.")); *Vazquez v. Cent. States Joint Bd.*, No. 04 C 1798, 2006 WL 695563, at *1 (N.D. Ill. Mar. 15, 2006). As is required, the Court will nevertheless review these motions by taking the facts presented in the Second Amended Complaint as true and drawing all reasonable inferences in a light most favorable to Mr. Shallenberger. *National Fid. Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987); *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014).

On August 26, 2020, the Indiana Child Support Bureau (the "Bureau") informed Mr. Shallenberger by mail that it placed a lien on his 2019 GMC Yukon due to an alleged failure to pay child support. (ECF 77-3). On July 31, 2021, the Bureau sent another letter, informing him that it had released the lien. (ECF 77-4). In November 2021, Mr. Shallenberger entered into a finance agreement with Best Deal to purchase a truck. (ECF 77-5). As part of the transaction, Mr. Shallenberger traded in the Yukon and "acknowledged that his 2019 GMC Yukon did not have any liens on it." (ECF 77-6 at 2).

On January 23, 2022, the guardian to whom Mr. Shallenberger had been paying child support passed away. On October 17, 2022,[2] the Howard Circuit Court issued an

---

[2] Some confusion has persisted among the parties and this Court on the exact date of the Howard Circuit Court order. For instance, Mr. Shallenberger repeatedly attributes the order date to January 23, 2022, the

order declaring Mr. Shallenberger's obligation to pay child support extinguished as of January 23, 2022, directing that arrears be "vacated to zero dollars," and ordering that $3,696.00 held in escrow be returned to Mr. Shallenberger. (ECF 45 at 5–6).

At an unspecified point in time, Best Deal reviewed the Yukon's title and discovered that a $3,696.00 lien remained on the vehicle. (ECF 77 at 3). Best Deal then paid $3,696.00 to the Bureau to release the lien on September 3, 2024. (ECF 77–7; ECF 80 at 1). Just over a month later, Best Deal filed suit against Mr. Shallenberger in Allen Superior Court. (ECF 77-6); *see Best Deal Auto Sales, Inc. v. Kohl Shallenberger*, Cause No. 02D09-2410-SC-009357. Best Deal alleged that Mr. Shallenberger breached their financing contract by misrepresenting that the Yukon was unencumbered. (ECF 77-6). Mr. Shallenberger then filed counterclaims against Best Deal, alleging negligent infliction of emotional distress, abuse of legal process, fraud, and breach of contract. (*Id.* at 4). A bench trial for that case was later held on October 8, 2025. (*Id.* at 1).

On March 19, 2025, Mr. Shallenberger, proceeding pro se, filed his initial complaint in this case against the State of Indiana, Howard Circuit Court, Howard Superior Court 2, various state and local officials, and "other unnamed individuals." (ECF 1). In the complaint, Mr. Shallenberger requested the Court "vacate alleged wrongful dismissals of his post-conviction relief petitions filed in state court, seal and expunge all records associated with those cases, and issue sanctions against the officials involved therein." (ECF 82 at 2). This Court struck that complaint, along with two other

---

date of the guardian's death. However, the order was signed and stamped by the Howard Circuit Court on October 17, 2022, then docketed on November 18, 2022. (ECF 98-1 at 10).

filings, on April 18, 2025, noting that Mr. Shallenberger (1) did not sign any of his filings, (2) failed to use one of the Court's pro se complaint forms, and (3) had yet to pay his filing fee or file a motion to proceed *in forma pauperis*. (ECF 9 at 3).

On May 13, 2025, Mr. Shallenberger filed his First Amended Complaint, again failing to use one of the Court's forms. (ECF 10). In the First Amended Complaint, Mr. Shallenberger removed his requests for post-conviction relief and sanctions, and instead alleged violations of due process and equal protection, civil conspiracy, and various tort claims. (ECF 10 at 3–4). Though the First Amended Complaint failed to name all defendants, the attached summonses provided by Mr. Shallenberger included some new defendants such as his former attorney Vickie Yaser. (ECF 10-3 at 9).

Following a motion to dismiss filed by several of the State defendants, this Court referred the motion, on December 10, 2025, to Magistrate Judge Andrew L. Teel to prepare a report and recommendation. (ECF 37). On December 15, 2025, before a report and recommendation was entered, the Magistrate Judge issued an order noting that Mr. Shallenberger had again failed to file his complaint using one of the Court's forms. (ECF 38). The Magistrate Judge added that the First Amended Complaint was "difficult to understand" and needed further clarification to assist in evaluating its merits, such as the inclusion of "all" allegations and "all" defendants that Mr. Shallenberger wished to sue. (*Id.*). Dutifully recognizing Mr. Shallenberger's pro se status and the need to construe pro se complaints "liberally and to allow ample opportunity for amending the complaint," the Magistrate Judge afforded Mr. Shallenberger "one last chance" to file a

second amended complaint and "forewarned" that failure to timely file the complaint on the proper form may result in dismissal. (*Id.*).

Before Mr. Shallenberger filed his Second Amended Complaint in response to the Magistrate Judge's order, the Allen Superior Court issued its judgment in Best Deal's suit against Mr. Shallenberger. (ECF 77-6). The court rejected Best Deal's breach of contract claim, holding that Mr. Shallenberger represented in good faith that the Yukon did not have a lien in light of the Bureau's letter dated July 31, 2021. (*Id.* at 3). The court also noted that no lien should have existed in September 2024 when Best Deal paid the Bureau $3,696.00 to unencumber the Yukon because Mr. Shallenberger's "child support obligation was terminated as of January 23, 2022." (*Id.* at 4). Though it recognized that Best Deal "suffered damages," it concluded that Mr. Shallenberger was not to blame. (*Id.*). That said, the court also concluded that Mr. Shallenberger did not meet "his burden of proof" regarding his counterclaims of negligent infliction of emotional distress, abuse of legal process, fraud, and breach of contract. (*Id.* at 4–5).

Following this decision, Mr. Shallenberger filed his Second Amended Complaint on January 15, 2026, this time using one of the Court's forms.[3] (ECF 45). In the body of his attached version of the Second Amended Complaint, Mr. Shallenberger listed the following parties as defendants: Adam Krupp, Agency Director of the Indiana Department of Child Services, in his official capacity; Mark A. McCann, Howard

[3] As the Magistrate Judge noted in his report and recommendation, Mr. Shallenberger used the Court's pro se form minimally. (ECF 82 at 2 n.1). Although Mr. Shallenberger completed the caption, provided an address, listed his phone number, supplied the number of defendants to be sued, and signed the complaint, he wrote "see attached" in all other locations. Mr. Shallenberger then attached his own version of the Second Amended Complaint to the Court's form, along with additional exhibits. (ECF 45).

County Prosecutor and Title IV-D Director, in his official and individual capacity; Megan Rogers, Title IV-D Case Manager/Enforcement Specialist, in her individual capacity; Debra C. Stewart, Clerk of the Howard Circuit Court, in her official capacity; Best Deal Auto Sales, Inc.; Burt, Blee, Dixon, Sutton & Bloom, LLP, the law firm that represented Best Deal in Allen Superior Court; and three of Burt Blee's attorneys, Jeremy Grogg, Matthew Senko, and J. Connor Fitzharris. (*Id.* at 5–7). With the omission of the State of Indiana, the Howard Circuit and Superior Courts, and Vickie Yaser in the Second Amended Complaint, they were terminated as defendants in the case. (*See* ECF 82; 86).

Shortly after filing the Second Amended Complaint, Mr. Shallenberger filed a motion for a preliminary injunction asking the Court to enjoin Defendants[4] "from continuing or initiating enforcement actions based on inaccurate child []support arrears or lien data" and require Defendants to effect "reconciliation of Plaintiffs Title IV []D enforcement records to conform to the controlling state []court order dated January 23, 2022." (ECF 46 at 3).

Mr. Shallenberger then filed a blizzard of documents in support of the Second Amended Complaint and his motion for a preliminary injunction, including several exhibits. (ECF 47–49; ECF 51–58). The Magistrate Judge struck most of these documents as improperly filed, and—once again—afforded Mr. Shallenberger leave to file an

---

[4] Mr. Shallenberger's Motion for a Preliminary Injunction did not specify which Defendants he sought to enjoin. (*See* ECF 46).

amended motion for preliminary injunction that complied with the local rules and this Court's Courtroom Procedures. (ECF 66).

On March 9, 2026, Mr. Shallenberger filed an Amended Motion for Preliminary Injunction, attaching a memorandum of law and five exhibits. (ECF 79; ECF 79-1; ECF 79-2). In that motion, Mr. Shallenberger asked the Court to require that Mr. Krupp, in his role with the Indiana Department of Child Services, review and correct Mr. Shallenberger's statewide child support arrears and liens. (ECF 79-1 at 15). He also asked the Court to require that Ms. Stewart, as the Clerk of Howard Circuit Court, produce a transcript of a July 10, 2015, proceeding that Mr. Shallenberger allegedly paid for, or in the alternative, explain why a transcript cannot be produced. (*Id.* at 16). This Court later denied Mr. Shallenberger's initial motion for a preliminary injunction as moot and denied the amended motion for a preliminary injunction. (ECF 111). In the order, the Court held that Mr. Shallenberger's disjointed arguments came "nowhere near" to even a "remote" possibility of success, let alone showing the strong likelihood of success required to obtain a preliminary injunction. (*Id.* at 5–6).

On March 4, 2026, the Private Defendants filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing this Court did not have jurisdiction to hear the case under the *Rooker/Feldman* doctrine and that the joint conspiracy claim within the Second Amended Complaint failed to meet the pleading standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (ECF 76; 77).

On June 18, 2026, Mr. Shallenberger filed the first of two Motions for Clerk's Entry of Default. (ECF 93). In this first motion, styled as a "Revised Motion for Clerk's Entry of Default," Mr. Shallenberger withdrew "any prior request for default as to Defendant Adam Krupp" because Mr. Krupp had appeared on June 9, 2026. (*Id.*). But Mr. Shallenberger still sought default against Ms. Rogers, who had yet to appear in the case. (ECF 93).

On June 22, 2026, Plaintiff filed a second default motion, styled as a "Motion for Clerk's Entry of Default Against Defendants Adam Krupp and Megan Rogers." (ECF 95). However, this second default motion was postmarked on June 9, 2026, whereas the first default motion was postmarked on June 11, 2026. (ECF 93–4 at 1; 95–4 at 1). As such, the first default motion (ECF 93) is construed as the operative Motion for Clerk's Entry of Default. Thus, insofar as ECF 93 withdraws Mr. Shallenberger's initial default motion against Mr. Krupp, the second default motion is **DENIED AS MOOT**. (ECF 95).

Finally, Defendants Debra Stewart and Megan Rogers filed individual motions for Judgment on the Pleadings under Rule 12(c) on June 24, 2026, and September 4, 2026, respectively. (ECF 97; 112). Both motions argue that Mr. Shallenberger's Second Amended Complaint fails to assert facts that support a plausible allegation of civil conspiracy involving Ms. Stewart and Ms. Rogers. (ECF 98; 112). Furthermore, Ms. Stewart contends that Mr. Shallenberger's First Amendment allegations (1) fail to establish liability against her in an official capacity, (2) are time-barred, and (3) are otherwise implausible. (ECF 98). Similarly, Ms. Rogers contends that Mr. Shallenberger's allegations (1) also lack a sufficient factual basis to plausibly state a

Fourteenth Amendment claim against her and (2) are otherwise mooted by state court proceedings. (ECF 113 at 4–6).

## II. Analysis

### A. Motion for Clerk's Entry of Default by Mr. Shallenberger

Under Rule 55(a), default must be entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). When Mr. Shallenberger filed his two Rule 55(a) motions, Ms. Rogers had yet to appear in the case. Before the Court could issue a ruling, Ms. Rogers appeared in the case and filed several responsive pleadings. (ECF 105; 106; 107; 108; 109; 112; 113). With that, Mr. Shallenberger's Rule 55(a) motion is likely moot. But even if default had been entered immediately, it would likely have been vacated in light of Ms. Rogers's pleadings.

Federal Rule of Civil Procedure 55 outlines a two-step process for the entry of default and default judgment in civil litigation. A party must first move for and obtain a clerk's entry of default under Rule 55(a). Fed. R. Civ. P. 55(a). Only after default is obtained may a party move for default judgment under Rule 55(b). Fed. R. Civ. P. 55(b). The Seventh Circuit maintains a general policy of "favoring trial on the merits over default judgment." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009). Default judgment is generally justified only "if the defaulting party has exhibited a willful refusal to litigate the case properly." *Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003). Where it can be shown that there is "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint," courts may vacate a default

judgment. *Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 810 (7th Cir. 2007). With that ability to readily vacate a default judgment for good cause, it follows that the threshold entry of default would also be "liberally" set aside where good cause exists. *See Signature Fin. LLC v. Auto Trans Grp. Inc.*, No. 17 C 9058, 2018 WL 1914557, at *2 (N.D. Ill. Apr. 23, 2018) (quoting *Cracco*, 559 F.3d at 631).

In her response to Mr. Shallenberger's Rule 55(a) motion, Ms. Rogers asserted that she only recently learned of the suit against her and immediately retained counsel. (ECF 109 at 2). While this account is questionable given that Mr. Shallenberger provided documentation showing Ms. Rogers was personally served on February 13, 2026, (ECF 78 at 3), no evidence before the Court establishes that Ms. Rogers "exhibited a willful refusal" to defend herself against this matter. *Davis*, 321 F.3d at 646. Furthermore, as discussed below, Ms. Rogers's filings present meritorious arguments defending the claims against her. Thus, had default been entered, the Court would have concluded that good cause existed to vacate default. But in any event, Ms. Rogers has appeared before default was entered and raised colorable defenses. Accordingly, Mr. Shallenberger's Motion for Clerk's Entry of Default is **DENIED**. (ECF 93).

### B. The *Rooker/Feldman* Doctrine

Among several contentions in support of their motion to dismiss, the Private Defendants argue that the *Rooker/Feldman* doctrine strips this Court of jurisdiction. (ECF 77 at 5–12).

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Rule 12(b)(1) and Rule 12(h)(3), a court must

dismiss a claim if it lacks subject matter jurisdiction. *Aljabri v. Holder*, 745 F.3d 816, 818 (7th Cir. 2014). The *Rooker/Feldman* doctrine, derived from two Supreme Court cases, *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), holds that lower federal courts "do not have subject matter jurisdiction to review state court civil decisions." *Edwards v. Ill. Bd. of Admissions to Bar*, 261 F.3d 723, 728 (7th Cir. 2001). Instead, parties seeking review of such decisions must challenge adverse rulings by that state's appellate system or by seeking a writ of certiorari from the U.S. Supreme Court. *Id.*

To determine whether the doctrine applies, courts ask "whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Kamilewicz v. Bank of Bos. Corp.*, 92 F.3d 506, 510 (7th Cir. 1996). In other words, the doctrine bars plaintiffs who lose in state court from "'recast[ing] their claims in federal court under the guise of federal constitutional claims that were not raised or decided by the state court . . . if the constitutional claims are inextricably intertwined with the merits of the state court judgment.'" *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993) (quoting *Guess v. Bd. of Med. Exam'rs*, 967 F.2d 998, 1002–03 (4th Cir. 1992)). Whether a plaintiff's federal claims are "inextricably intertwined" with a state court judgment turns on "whether the plaintiff alleges an injury 'caused by the state court judgment.'" *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. 2023) (quoting *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 741 (7th Cir. 2016)).

Aside from an accurate recitation of the doctrine, the Private Defendants present almost no argument in support of the jurisdictional bar. The Seventh Circuit has

repeatedly held that underdeveloped arguments, without citations to "relevant portions of the record and supporting authority" are waived. *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009); *Pranckeviciute v. Carroll*, 958 F.2d 374 (7th Cir. 1992); *Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 854 (7th Cir. 1998); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010); *United States v. Adams*, 625 F.3d 371, 378 (7th Cir. 2010); *United States v. Hosseini*, 679 F.3d 544, 558 n.4 (7th Cir. 2012); *Harrington v. Duszak*, 971 F.3d 739, 741 (7th Cir. 2020). While the Private Defendants generally point to the judgment in Allen Superior Court and implicitly assert that Mr. Shallenberger seeks to relitigate his counterclaims by this action, they fail to articulate how his instant conspiracy allegations are a recasting of his state court contract and tort claims. *See Ritter*, 992 F.2d at 754. They also do not explain how Mr. Shallenberger's instant claims are akin to injury caused by the state court judgment. *See Hadzi-Tanovic*, 62 F.4th at 399.

But even if they had, the *Rooker/Feldman* argument would not succeed. Mr. Shallenberger's core conspiracy allegation is that the Private Defendants participated in a civil conspiracy with state officials to deprive Mr. Shallenberger of his First and Fourteenth Amendment rights. Whether he has plausibly alleged that conspiracy is a separate question, but Mr. Shallenberger's allegations of an independent conspiracy perpetrated by private and state parties does not support the conclusion that Mr. Shallenberger has recast his counterclaims as a federal complaint that seeks to review a state court decision. *See Edwards*, 261 F.3d at 728. Therefore, the *Rooker/Feldman* doctrine does not strip this Court of jurisdiction.

**C. § 1983 Conspiracy**

Turning to the substance of the Second Amended Complaint, each defendant has filed either a motion to dismiss or a motion for judgment on the pleadings as to all claims. (ECF 76; 97; 112). In the briefs supporting these motions, each party contends that Mr. Shallenberger has failed to plausibly plead a conspiracy against them under Section 1983. (*See* ECF 77 at 7–13; 98 at 13–14; 113 at 5).

As a threshold matter, "[a] motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams*, 742 F.3d at 727–28. With the standard of review being the same, the Court will analyze Mr. Shallenberger's conspiracy allegations jointly as to all defendants.

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *accord McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2013) (holding a complaint "must contain allegations plausibly suggesting (not merely consistent with) an entitlement to relief") (internal quotations omitted). Put another way, if a complaint's allegations "however true, could not raise a claim of entitlement to relief," the case must be dismissed. *Twombly*, 550 U.S. at 558.

Additionally, "a formulaic recitation of the elements of a cause of action" without supporting facts is inadequate. *Id.* at 555. A complaint therefore fails to state a claim if it does not "describe the claim in sufficient detail to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests [or] plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotations omitted).

An additional wrinkle is added when a plaintiff alleges a conspiracy under Section 1983 that includes private individuals or entities. To state a claim for relief under Section 1983, plaintiffs "must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). Thus, "[l]ike the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983" generally precludes liability against a private actor "no matter how discriminatory or wrongful" their conduct may be. *Id.* at 50 (internal quotations omitted).

"The 'conspiracy theory,' or the 'joint participation doctrine,' provides an exception: if a private actor conspires with a state actor to deprive someone's constitutional rights, the private actor may be subject to a § 1983 suit." *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 825 (7th Cir. 2019). Thus, Section 1983 liability as to private persons or entities can be established only if it is demonstrated that private actors "wilfully participate[d] in a conspiracy with the state or one of its

agents." *Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir. 1992). To that end, a plaintiff must "allege the parties, the general purpose, and the approximate date[s] of the conspiracy." *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). This includes pleading the "the who, what, when, why, and how" of an alleged conspiracy. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1016 (7th Cir. 2000).

Mr. Shallenberger's Second Amended Complaint falls well short of all the above pleading standards. The entirety of Mr. Shallenberger's conspiracy claim is as follows:

> Plaintiff realleges the foregoing paragraphs. Plaintiff alleges that private defendants and state defendants jointly participated in conduct fairly attributable to the State, including communications regarding lien/arrears validation notwithstanding the controlling order and subsequent reliance on that enforcement posture in connection with the deprivation alleged. These allegations plausibly support joint action under Dennis v. Sparks, 449 U.S. 24 (1980) and Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982).

(ECF 45 at 8) (omission of italics for case citations in original).

As previously noted, factual allegations are taken as true when considering a motion to dismiss. *Reynolds*, 623 F.3d at 1146. But for the Court to take an allegation as true, plaintiffs must actually plead it. While conclusorily enumerating the "who," Mr. Shallenberger does not provide the information necessary to inform Defendants or the Court as to the "what, when, why, and how" of a conspiracy, much less one that plausibly demonstrates state action by both state and private actors. Even if we assumed, as Mr. Shallenberger alleges, that "communications regarding lien/arrears" took place between the Private Defendants and each of the state officials, there are no details as to how those communications involved willful or concerted efforts to

coordinate an attempt to deprive Mr. Shallenberger of his First or his Fourteenth Amendment rights.

Mr. Shallenberger responds to these deficiencies in several ways but fails to provide additional details. As to the Private Defendants, he asserts that Best Deal's admission that it paid the lien on the Yukon demonstrates that their interactions with state officials "occurred within a state-administered enforcement framework rather than a purely private contractual setting." (ECF 80 at 1, 8–12). As to Ms. Stewart, Mr. Shallenberger seemingly abandons his conspiracy claim against her entirely, arguing that "a Stewart-specific conspiracy theory" is unnecessary "for relief against Stewart." (ECF 101 at 15–16). And as to Ms. Rogers, Mr. Shallenberger continues to rely solely upon a single communication in November 2024, between someone in the Title IV-D office named "Megan" and counsel for Best Deal regarding his lien/arrears status. (ECF 122 at 5–8).

But even taking all the above as true, the Second Amended Complaint and accompanying briefing fail to present a factual narrative that plausibly supports the "what, when, why, and how" of a conspiracy. *Brokaw*, 235 F.3d at 1016. The existence of a conversation between Ms. Rogers and Best Deal through counsel does not by itself—without evidence of the conspiracy's general purpose, willful participation, or the approximate dates of the conspiracy—make a conspiracy plausible. *See Loubser*, 440 F.3d at 443; *Bowman*, 980 F.2d at 1107. Similarly, the fact that Best Deal paid a lien that should or should not have existed in the first place does not by itself establish conspiracy or constitute state action. Were the opposite true, all private persons would be

transformed into state actors by the mere act of paying taxes or assessments. Under color of law for the purposes of Section 1983 liability requires more, such as how a payor of such assessments did so willfully in conjunction with a coordinated attempt to deprive a plaintiff of their constitutional rights. *Bowman*, 980 F.2d at 1107.

These threadbare allegations preclude any conclusions as to who orchestrated the conspiracy, what was agreed to among Defendants, when a plan was agreed to or set in motion, and how each Defendant, especially the Private Defendants, acted under color of state law. *See Loubser*, 440 F.3d at 443; *Am. Mfrs. Mut.*, 526 U.S. at 49–50. Therefore, Mr. Shallenberger failed to plausibly state a conspiracy claim against any defendant and the claim must be dismissed. As such, the Court need not consider any other alternative arguments raised by the various defendants.

**D. First Amendment Claim Against Defendant Debra Stewart**

In the Second Amended Complaint, Mr. Shallenberger alleges that Ms. Stewart deprived him of his First Amendment right of access to the courts by failing to provide a transcript of a July 10, 2015, Howard Circuit Court proceeding for which he allegedly paid a deposit. (ECF 45 at 9). Mr. Shallenberger provides no other law or factual allegations in support of this assertion. Ms. Stewart counters this claim by asserting the Second Amended Complaint fails to establish liability against her in an official capacity, and that the claim is implausible and time barred. (ECF 98).

Circuit court clerks cannot be sued for damages in their official capacity as they are considered state officials, thereby excluding them from liability under the Eleventh Amendment. *Parsons v. Bourff*, 739 F. Supp. 1266, 1267 (S.D. Ind. 1989); *Winters v.*

*Mowery*, 836 F. Supp. 1419, 1424 (S.D. Ind. 1993); *Bowes-N. v. Miller*, No. 2:21-CV-287-TLS-JPK, 2021 WL 5759121, at *3 (N.D. Ind. Dec. 3, 2021); *accord State ex rel. McClure v. Marion Superior Ct., Room No. 1*, 239 Ind. 472, 158 N.E.2d 264, 269 (1959) (concluding that circuit court clerk is a state official as their duties are to the court, not the county).

That said, a state official, including a circuit court clerk, may be sued in their official capacity for injunctive relief. *Id.* Here, Mr. Shallenberger has filed suit against Ms. Stewart in her official capacity, seeking injunctive relief in the form of "[a]n order directing production" of the transcript or, in the alternative, "a sworn certification identifying the reason for the nonproduction." (ECF 45 at 9–10). Thus, Mr. Shallenberger's First Amendment claim against Ms. Stewart may proceed despite the Eleventh Amendment. Additionally, Ms. Stewart's status as a state official, not a municipality official, precludes *Monell* liability. *See Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 690–95 (1978). Accordingly, the Court need not consider Ms. Stewart's *Monell* defenses. (*See* ECF 98 at 7–9).

As outlined above, a plaintiff must present enough facts that "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Put simply, for a Section 1983 claim to meet threshold pleading standards, a plaintiff must assert facts that, if true, plausibly demonstrate a "Government-official defendant," violated the Constitution by that official's "own individual actions." *Iqbal*, 556 U.S. at 676. The Second Amended Complaint does not specify the exact nature of his First Amendment claim. But inasmuch as it asserts that Ms. Stewart denied Mr. Shallenberger a paid-for

transcript because he exercised an alleged First Amendment right of access to the courts, the claim is construed as a First Amendment retaliation claim.

To plead a First Amendment retaliation claim under Section 1983, Mr. Shallenberger must demonstrate that he (1) "engaged in activity protected by the First Amendment," (2) "suffered a deprivation that would likely deter First Amendment activity in the future," and (3) that "the First Amendment activity was . . . 'at least a motivating factor' in the Defendant['s] decision to take the retaliatory action." *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 766 (7th Cir. 2021) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)).

The Second Amended Complaint does not meet this threshold. First and foremost, neither Mr. Shallenberger's Second Amended Complaint nor his response brief provides any case law to suggest that an attempt to obtain transcripts of court proceedings is an "activity protected by the First Amendment." *145 Fisk, LLC* at 766. The general public has a right of access to the courts under the First Amendment. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575–80 (1980). However, a civil litigant, not proceeding *in forma pauperis*, does not have an "absolute" right to receive a transcript of a civil proceeding at public expense." *Thomas v. Landrum*, 612 F. App'x 848 (7th Cir. 2015); 28 U.S.C. § 753(f). Indeed, "[e]ach [court] reporter may charge and collect fees for transcripts requested by the parties" and "may require any party requesting a transcript to prepay the estimated fee in advance . . . ." § 753(f). Put another

way, a civil litigant does not have a First Amendment right to a transcript if they have not fully paid for it. *Id.*

Taking the Second Amended Complaint at face value, Mr. Shallenberger paid an unenumerated "deposit" to the Howard Circuit Court for a transcript of proceedings that took place on July 10, 2015. (ECF 45 at 7–9). However, Mr. Shallenberger pleads no facts as to whether he paid the full balance to receive the completed transcript, whether he in fact returned to the Howard Circuit Court Clerk's Office to obtain the transcript or attempt to pay the remaining balance on the transcript's total cost, or when and how Ms. Stewart affirmatively prevented Mr. Shallenberger from obtaining his desired transcript. The lack of case law to support that Mr. Shallenberger possessed a First Amendment right to unpaid transcripts, along with the threadbare allegations of a paid deposit and lack of a transcript in hand do not plausibly lead one to conclude that Mr. Shallenberger "engaged in activity protected by the First Amendment," much less that Ms. Stewart withheld the transcript because of that activity. *See 145 Fisk, LLC*, 986 F.3d at 766. Therefore, Mr. Shallenberger has failed to plead a First Amendment retaliation claim against Ms. Stewart under Section 1983.

**E. Fourteenth Amendment Due Process Claim Against Megan Rogers**

Finally, Mr. Shallenberger asserts that Ms. Rogers, along with Defendants Adam Krupp and Mark McCann, deprived him of "protected property interests" in the $3,696.00 ordered released by Howard Circuit Court on October 17, 2022. (ECF 45 at 8). Mr. Shallenberger also alleges that Ms. Rogers, along with Krupp and McCann, deprived him of his Fourteenth Amendment "right to be free from enforcement actions

premised on arrears/lien indicators inconsistent" with the October 2022 order, "by failing to implement and maintain enforcement records consistent with the controlling order." (*Id.*).

Viewing these allegations under the same plausibility standards as outlined in *Twombly*/*Iqbal*, this claim also fails. The sole factual narrative regarding Ms. Rogers as to this claim is one paragraph on page 6 of the Second Amended Complaint. (ECF 45 at 6). There, Mr. Shallenberger asserts that Defendant Fitzharris, counsel for Best Deal, spoke in November 2024, with a person in the Title IV-D office named "Megan" about Mr. Shallenberger's lien status. (*Id.*). Mr. Shallenberger then concludes that the Private Defendants "relied on that state-sourced" information "in connection with the deprivation alleged herein." (*Id.*).

But the Second Amended Complaint goes no further to enumerate an actual deprivation of due process by Ms. Rogers. It does not allege that Ms. Rogers engaged in "enforcement actions" by placing the unauthorized lien herself on the Yukon despite the October 2022 order. It does not suggest Ms. Rogers personally withheld the $3,696.00 that was ordered released. It does not contend that Ms. Rogers acted affirmatively in any way to deprive Mr. Shallenberger of his Fourteenth Amendment rights. At best, the Second Amended Complaint, taken as true, only shows that Ms. Rogers was aware in November 2024, that a lien once existed and that she spoke to Best Deal's counsel regarding the lien that Best Deal had paid off two months prior. (ECF 77–7; ECF 80 at 1). Without more, this cause of action suffers from the same plausibility deficiencies as the previous two claims.

Furthermore, the Court takes judicial notice[5] that on March 10, 2026, Mr. Shallenberger filed a motion in Howard Circuit Court "to Enforce October 17, 2022 Order, for Judicial Accounting and Statutory Interest," involving the same $3,696.00 disputed here. (ECF 108; *see Shallenberger v. State of Indiana, ex rel.*, Cause No. 34C01-0403-JP-000042). That motion sought relief similar to what is requested here as a result of Ms. Rogers's alleged conduct. There, Mr. Shallenberger sought, among other things, to "[e]nforce the October 17, 2022 adjudication, . . . order the Howard County Title IV-D Child Support Office to file, within fourteen (14) days, a sworn accounting executed by an official with personal knowledge of the Title IV-D ledger; [r]equire attachment of the complete payment history and ledger activity . . . [and] [a]ward statutory interest as provided by Ind. Code § 24-4.6-1-101." *Shallenberger*, Cause No. 34C01-0403-JP-000042, Verified Motion dated March 10, 2026.

In an order dated August 18, 2026, the Howard Circuit Court concluded that Mr. Shallenberger was "entitled to or owed $0.00 from the State of Indiana in this matter as of July 24, 2026." (ECF 108 at 2). Furthermore, the order confirmed that Mr. Shallenberger's "child support arrearage in this matter [was] paid in full or $0.00 as of July 24, 2026." (*Id.* at 2–3). Thus, even if Mr. Shallenberger plausibly pleaded a Fourteenth Amendment claim here against Ms. Rogers, Mr. Krupp, and Mr. McCann, regarding his lien status and the allegedly withheld $3,696.00, the Howard Circuit

---

[5] Pursuant to Fed. R. Evid. 201(b)(2) and 201(c)(1), the Court may take judicial notice of orders entered in state court as "[t]hey are public records and appropriate subjects of judicial notice." *In the Matter of Lisse*, 905 F.3d 495, 496 (7th Cir. 2018) (citing Fed. R. Evid. 201(b)(2); Fed. R. Evid. 901(b)(7)).

Court's August 2026 order likely resolved those claims and effectuated the very relief sought here. *See Allen v. McCurry*, 449 U.S. 90, 95 (1980) (recognizing that parties may not relitigate claims in federal court if they previously had a "full and fair opportunity" to litigate them in state court); *Jones v. Farmer*, 19 F. App'x 381, 383 (7th Cir. 2001).

But in any event, the Court holds that Mr. Shallenberger has failed to plausibly assert that Ms. Rogers deprived him of a property interest in violation of the Fourteenth Amendment. Accordingly, Ms. Rogers is entitled to judgment in her favor under Rule 12(c) as to the Fourteenth Amendment claim.

**F. Leave to Amend**

As explained above, Mr. Shallenberger failed to plead facts that would make any claim in his Second Amended Complaint "plausible on its face." *See Twombly*, 550 U.S. at 570. A plaintiff may amend his complaint once as a matter of course without the court's approval within 21 days of service. Fed. R. Civ. P. 15(a). After that, a plaintiff can amend "only with the opposing party's written consent or the court's leave." *Id.*

In addition to his initial complaint, Mr. Shallenberger has twice been afforded leave to amend his complaint. (ECF 10; 45). "Leave to amend is to be 'freely given when justice so requires.'" *Liu v. T&H Mach., Inc.*, 191 F.3d 790, 794 (7th Cir. 1999) (quoting *Payne v. Churchich*, 161 F.3d 1030, 1036 (7th Cir. 1998) and Fed. R. Civ. P. 15(a)). "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). And where a plaintiff is a pro se litigant, "the liberal approach to amending pleadings applies with even more force." *Id.*

That said, the willingness to grant leave to amend is not absolute. *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002). The decision to grant or deny a party leave to amend lies solely with the district court and will only be overturned for abuse of discretion. *Id.*

After the first two complaints failed to (1) use the Court's form, (2) fully identify all defendants, and (3) were factually "difficult to understand," the Magistrate Judge issued an order "afford[ing]" Mr. Shallenberger "one last chance to file a second amended complaint." (ECF 38). To date, none of Mr. Shallenberger's complaints have provided enough factual narrative for the Court to understand the bases for his grievances, let alone meet plausibility standards. Given these repeated deficiencies and the Magistrate Judge's explicit warning of "one last chance," the Court is unconvinced that granting further leave will ameliorate these pleading concerns. (ECF 38). The Court therefore concludes that a grant of further leave to amend will be futile and the case should be dismissed with prejudice. *Brunt*, 284 F.3d at 720; *see Jendrzejczyk v. LaPorte Cnty., In.*, No. 2:15-CV-300, 2017 WL 3387405, at *7 (N.D. Ind. Aug. 4, 2017) (holding "a plaintiff is not entitled to endless attempts to state his claims").

## CONCLUSION

For the foregoing reasons,

- Best Deal, Burt Blee, Jeremy Grogg, Matthew Senko, and J. Connor Fitzharris's Motion to Dismiss is **GRANTED** (ECF 76);
- Mr. Shallenberger's Revised Motion for Clerk's Entry of Default as to Megan Rogers is **DENIED** (ECF 93);

- Mr. Shallenberger's Motion for Clerk's Entry of Default as to Adam Krupp and Megan Rogers is **DENIED AS MOOT** (ECF 95);
- Debra Stewart's Motion for Judgment on the Pleadings is **GRANTED** (ECF 97); and
- Megan Rogers's Motion for Judgment on the Pleadings is **GRANTED** (ECF 112).

Accordingly, each claim against these Defendants is **DISMISSED**, with prejudice. The sole remaining claims in the case are Mr. Shallenberger's joint conspiracy and Fourteenth Amendment claims against Mr. Krupp and Mr. McCann.

SO ORDERED on October 27, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT